**AMERICAN HOME PRODUCTS COR-
PORATION, Appellant,**

v.

**B. F. ASCHER & COMPANY, INC.
Appellee.**

Patent Appeal No. 8848.

United States Court of Customs
and Patent Appeals,
Feb. 22, 1973.

Mortimer Altin and Julius A. Bell,
New York City, attorneys of record, for
appellant.

Robert D. Hovey, Kansas City, Mo.,
attorney of record, for appellee.
Schmidt, Johnson, Hovey & Williams,
Kansas City, Mo., of counsel.

Before MARKEY, Chief Judge, RICH,
BALDWIN and LANE, Judges, and
CLARK, Justice, (Ret.), sitting by desig-
nation.

MARKEY, Chief Judge.

This appeal is from the decision of
the Trademark Trial and Appeal Board,
166 USPQ 61 (1970), dismissing appel-
lant's oppositions to the registration of
appellee's marks AYR Tab [1] and AYR,
ASCHER [2] for preparations for use as a
bronchodilator on the ground that these
marks "so resemble" appellant's regis-
tered mark AYERST [3] for various me-
dicinal and pharmaceutical preparations,
including two products for the treatment
of bronchial ailments, "as to be likely,
when applied to the goods * * * , to

1. Serial No. 283,057, filed October 23,
   1967.

2. Serial No. 283,058, filed October 23, 1967.

3. Reg. No. 505,248, issued December 28,
   1948 to a predecessor and Reg. No. 723,-
   260, issued October 31, 1961.

cause confusion, or to cause mistake, or to deceive." Lanham Act, § 2(d), 15 U.S.C. § 1052(d). We affirm.

Appellant took testimony of nine witnesses and introduced various documentary and physical exhibits. Appellee relied upon cross examination of appellant's witnesses.

The record establishes that Ayerst Laboratories, a division of American Home Products Corporation, is a well-known pharmaceutical house in this country. AYERST is the house mark of this division and is found not only on packing and promotional materials but also as an imprint on every solid product, except one. Many preparations are further identified by product marks not involved here. We readily accept appellant's argument that although AYERST was originally a surname, that of one of the founders of a predecessor company, it has acquired secondary meaning. As a house mark, its clear function is the indication of source or origin. Priority of use is not contested.

The issue is whether either of the marks AYR Tab[4] or AYR, ASCHER is so similar to AYERST as to be likely, when applied to the respective medicinals, to cause confusion, mistake or deception as to the source of the goods. Appellant strongly contends that the registration of marks having AYR as the dominant portion would be extremely damaging to its interest in view of the common practice in the pharmaceutical industry of compounding product trademarks with the prefix being a foreshortened form of the house mark. Appellant so uses AYER in foreign countries. AYR, it is urged, would similarly denote an association of the product with Ayerst Laboratories. The testimony introduced by appellant of five members of the medical and pharmaceutical professions is said to provide evidence of this likelihood of confusion.

■ As we have stated many times, it is each mark in its entirety, as applied to the respective goods, which must be considered. Glenwood Laboratories, Inc. v. American Home Products Corporation, 455 F.2d 1384, 59 CCPA —— (1972). The marks of appellee are AYR Tab and AYR, ASCHER. The word "Tab," though disclaimed in the former, cannot be ignored in determining likelihood of confusion. Industria Espanola v. National Silver Co., 459 F.2d 1049, 59 CCPA —— (1972). Nor can the word ASCHER in the latter be disregarded. As this Court pointed out in Rockwood Chocolate Co., Inc. v. Hoffman Candy Co., 372 F.2d 552, 555, 54 CCPA 1061, 1065 (1967), "each case requires consideration of the effect of the *entire mark* including any term in addition to that which closely resembles the opposing mark." The inclusion of the major portion of appellee's company name is in this case a significant factor against likelihood of confusion as to source.

■ Appellant's mark, on the other hand, is AYERST. Although others may employ trademarks incorporating a foreshortened form of their house mark, appellant does not do so in this country. Whether or not appellant adopts such marks in the future and is permitted to register the same is irrelevant here. The established right of the owner of a registered trademark to protection in the area of normal product expansion cannot be extended to an absolute right to expansion of the mark itself.

The testimony of appellant's witnesses was predicated on earlier interviews in which an impression as to manufacturer was elicited after the witnesses had been shown Exhibit H, a bottle with the mark AYR on it. We agree with the board that the interviews themselves can be given no probative value as a "survey." Appellant admits this but contends that the later testimony confirming the prior interview statements should be given due weight and consideration.

The original statements were made, however, after being shown the mark AYR, not AYR Tab or AYR, ASCHER.

4. The term "Tab" has been disclaimed apart from the mark.

Appellant argues that this should have no effect inasmuch as "[t]he determination of the issue of likelihood of confusion as to source or origin is not on the basis of the similarity of 'Tab' and 'ASCHER' to AYERST but on the basis of 'AYR' to AYERST." "In any event", says appellant, "American's witnesses testified under oath that no matter what was added to 'AYR' there would be an association with AYERST . . ."

As stated previously, the marks must be considered in their entireties in determining likelihood of confusion. AYR is not the mark in issue. Yet the initial effect was made on appellant's witnesses by being shown only AYR. Later testimony on being confronted with a group of four labels bearing the marks AYR; AYR, ASCHER; AYR Tab; and AYR-CAP and being asked whether "your reaction with respect to association with Ayerst would be the same or different" cannot be construed as an unbiased first impression. Further, one witness responded that "ASCHER would indicate it may be a different manufacturer."

We find no basis for holding that there would be a likelihood of confusion on the concurrent use on medicinal products of the mark AYERST and the marks AYR Tabs and AYR, ASCHER. The decision of the board is affirmed.

Affirmed.