W. Selden SAUNDERS and Rudkin-Wiley Corporation, Plaintiffs,

v.

AIR–FLO COMPANY, Robert G. Geiger, and Recreational Supply and Equipment, Defendants.

No. S 74–83.

United States District Court, N. D. Indiana, South Bend Division.

Aug. 10, 1977.

John T. Mulvihill, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, Ind., Francis T. Carr, Robert D. Fier, Albert J. Breneisen, Anthony Amaral, Jr., Kenyon & Kenyon, Reilly, Carr & Chapin, New York City, for plaintiffs.

Eugene C. Knoblock, James D. Hall, Oltsch & Knoblock, South Bend, Ind., for defendants.

## MEMORANDUM OPINION

ALLEN SHARP, District Judge.

This is an action in which Plaintiffs allege infringement of U.S. Patents Nos. 3,241,876 ('876) and 3,309,131 ('131) and of trademark Reg. No. 887,396 by Defendants. Defendants deny all counts in the complaint. The trial of the action consumed one week before this Court. The purpose of this Memorandum Opinion is to state the legal basis and reasons for the separately entered Findings of Fact and Conclusions of Law.

### The Patent Issues

Both patents in suit are directed to the mounting of a windshield or deflector upon the cab of a truck. The '876 patent relates to the mounting of a windshield on the cab of a truck-trailer combination having a gap between the truck and the trailer. The '131 patent is directed to the mounting of a windshield or deflector on the cab of a truck having a large load carrying van body behind the cab. The purpose of the windshield in each patent is to reduce the frontal air pressure or drag encountered by the portion of the vehicle behind the shield so as to consume less fuel than otherwise would be necessary.

The '876 patent claims a shield of specified shape and size mounted in a specified position relative to the cab and the trailer. The '131 patent claims a shield mounted in a specified position on the cab and of a specified range of dimensions.

Witnesses for the Plaintiffs included the inventor, an officer of the licensee of the patents in suit, an aerodynamic expert and representatives of marketing survey firms. Plaintiffs also called to the stand or introduced depositions of the Defendant Robert G. Geiger and three other representatives of Defendants.

The Defendant Air-Flo Company manufactures and sells an air deflector of a different shape than the shape disclosed and claimed in the Saunders patents and recommend to purchasers the mounting of that deflector on the cab of a truck in a selected spaced relation above the cab rather than in "air impervious" contact with the cab as specified in the '876 patent. In a few instances Defendant Air-Flo Company has installed a deflector for a customer.

### The Issue of Validity
#### Anticipation—35 U.S.C. § 102

Defendants introduced at trial a number of prior patents and publications which taught and disclosed numerous types and shapes of shields or baffles mounted upon vehicles of different types and in numerous positions and relations, all in a manner to deflect air away from a following portion or article in or on the vehicle. Defendants

introduced in evidence publications showing various examples of streamlining of vehicles and uses of windshields which have occurred over the years for such purposes as protection of the occupants of a vehicle from exposure to the wind, reduction of drag and fuel consumption, and facilitating ease of handling of a vehicle. The vehicles to which such prior devises have been applied include automobiles, trucks and tractor-trailer combinations. Defendants also introduced a number of prior patents which disclosed shields and deflectors of the same shape and configuration as claimed in the patents in suit, and/or of other shapes so sized and positioned as to deflect air from a vehicle, such as a trailer behind the cab, and thus reduce drag.

The prior art includes the Stamm patent (DX–D13) issued to the Chrysler Corporation which discloses the mounting of a baffle upon the cab of a truck towing a trailer spaced behind the cab, which shield or deflector is so shaped, sized and positioned as to deflect air away from the front of the trailer. The shield or deflector of the Stamm patent is slightly different in shape from that utilized by Plaintiff Rudkin-Wiley Corp.; however, the shield of the Stamm patent is substantially identical to that illustrated in Fig. 21 of Saunders '876 patent. Thus the Stamm patent fully anticipates the Fig. 21 embodiment of the Saunders patent '876 and completely anticipates the combination and arrangement of parts specified and claimed in Saunders patent '876.

Further anticipation of the subjects matter of the patents in suit is to be found in the reports (PX–18A,B,C) of wind tunnel tests made at the University of Maryland prior to 1962, by which workers in the art are clearly taught that the use of a fairing or deflector mounted on the cab of a tractor-trailer vehicle and terminating forwardly of the trailer will reduce air drag and increase fuel economy.

The only subject claimed by Saunders which has not been specifically shown by the Stamm patent and the University of Maryland publications has been a forwardly

convexed shape of a windshield and a range of dimensions and proportions of the shield and the vehicles. However, the teachings of the Stamm patent and the University of Maryland publications are directed to the use of truck-trailer-deflector combinations, describe the air drag reduction achievable by air deflectors or fairings, and are sufficiently clear to enable persons skilled in the art who read them to achieve air drag reduction by applying the disclosures thereof in mounting a deflector on a tractor-trailer combination of a type and size in which the reader is interested. The respective combinations and arrangements of parts shown in the Stamm patent and in the University of Maryland publications are the same as those claimed in the Saunders patents, and hence are effective anticipations under 35 U.S.C. § 102(a) because the Stamm patent and the University of Maryland publications were prior to the work of the patentee Saunders, and were patented or published more than one year prior to the date of the applications for the Saunders patents.

### The Patents In Suit Are Invalid Under 35 U.S.C. § 103

35 U.S.C. § 103 reads as follows:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at. the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

Any contention by Plaintiffs that the precise parameters of shape, size and position of the windshield claimed in the patents in suit have not been disclosed in the Stamm patent and the University of Maryland publications is fully answered by reference to exhibits introduced in this case including prior patents and publications which must be considered in connection with the de-

fense of invalidity because of obviousness of the subject matter claimed under 35 U.S.C. § 103. Thus Hoerner's book (DX–AB) published before the dates of filing the applications for the Saunders patents in suit, includes an illustration by the noted Italian scientist of ancient times, Leonardo da Vinci, disclosing the occurrence of low pressure eddies behind a wind baffle. The shaping of wraparound automotive windshields, i. e. forwardly convexed horizontally and rearwardly upwardly inclined, was known and in common use long prior to the dates of the applications for the Saunders patents in suit. Furthermore, the patentee Saunders testified that a flat inclined shield would achieve a drag reduction benefit (R 1204, 165).

The range of dimensions and ratios specified in the claims of the two Saunders patents were admitted by Saunders not to be critical to the accomplishment of air drag reduction. Thus Saunders stated that air drag reduction would be achieved if the shield was of a height less than claimed in the patent (R 1202), or if the spacing between the shield and the trailer was less than the claimed range (R 1203), or if the width of the shield was less than that of the range in the patent (R 1204). Optimization of the functions of a known arrangement of parts in a device does not characterize patentable invention. *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162; *A. R. Inc. v. Electro Voice, Inc.,* 311 F.2d 508 (7th Cir. 1962).

Inasmuch as the only features of the claims of the two Saunders patents which are not precisely defined in the Stamm patent and in the University of Maryland publications are not critical, as admitted by Mr. Saunders, and could be easily ascertained by anyone skilled in the art, as by test of a unit to observe the bug pattern on the trailer as explained by Mr. Geiger (R 683, 714), we have a classic basis for a determination of obviousness of the subject matter of the Saunders claims under *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, which stated this test:

"Under Section 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined."

Here the prior art includes the Stamm patent, the University of Maryland publications, numerous bug deflector patents for devices mounted on the hood of an automobile to deflect air currents so that bugs will not strike a windshield. The bug deflectors shown in these patents are of various shapes and configurations and various spacings relative to the windshield.

The only difference between the prior art disclosures and the claims of the Saunders patents at issue relates to the claimed ranges of size and position of a shield. The level of ordinary skill in the art is shown by Mr. Geiger's testimony that observation of bug patterns on a trailer enabled him to determine or verify the effectiveness of the shield to deflect air from the trailer.

Employing these criteria in this case, the obviousness of the subjects matter of the Saunders patent claims is evident under. *Graham v. John Deere Co.,* 383 U.S. 1, 18, 86 S.Ct. 684, 15 L.Ed.2d 545. See also *Hotchkiss v. Greenwood,* 52 U.S. (11 Howard), 248, 267, 13 L.Ed. 683.

Another test of obviousness was stated in *Anderson's-Black Rock v. Pavement Co.,* 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969):

"A combination of elements may result in an effect greater than the sum of the several effects taken separately. No such synergistic result is argued here. It is, however, fervently argued that the combination filled a long felt want and has enjoyed commercial success. But those matters 'without invention will not make patentability. . . .' We conclude further that to those skilled in the art the use of the old elements in combination was not an invention by the obvious-nonobvious standard. Use of the ra-

diant-heat burner in this important field marked a successful venture. But as noted, more than that is needed for invention."

See also *Sakraida v. AG-Pro, Inc.*, 425 U.S. 273, 281, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); and *St. Regis Paper Co. v. Bemis*, 549 F.2d 833 (7th Cir. 1977). *Sakraida* and *St. Regis Paper* represent the last word on this subject from the Supreme Court and our own Court of Appeals. It is the view of this Court that they compel the result reached here as to validity. Absent this compulsion this Court might be inclined to decide the validity issue differently than here announced. This Court has no such hesitation about its announced decision on the infringement issue.

There is no evidence in this case answering any synergistic effect. The shield of the Saunders' patents accomplishes only the same result of air deflection and reduction of air drag taught by the Stamm patent (DX–D13); by the University of Maryland reports (PX–18B); by bug deflector patents, such as DX–D6, 9, 10 and 18; and by the snowplow shaped deflector of the Hornke patent (DX–D16).

█ Plaintiffs argue that the commercial success of Rudkin-Wiley Company (R–W), the licensee under the Saunders' patents, is indicative of validity of Plaintiffs' patents. However, the testimony of Mr. Wiley reveals that, although the first Airshield product was sold in 1966 (R 177), the first sales efforts were difficult. Vigorous and continuous sales promotion, such as shown in Plaintiffs' Exhibits PX–15A, B, C, D, F and G, were utilized by Plaintiff R–W. Also R–W persuaded publications to publish articles about air deflectors, such as PX–16A–M, and supplied information for such articles (R 331). Despite such sales promotion, it was not until the OPEC fuel crunch in 1973 that sales "took off" (R 353, 320). Also, after the OPEC oil crunch Airshield benefitted from promotion of its product by truck manufacturers when government pressure was applied to truck manufacturers to achieve fuel efficiency (R 210). It is clear, therefore, that any commercial success achieved by R–W was the result of sales promotion and of outside factors, such as the OPEC oil crunch and government pressure on truck manufacturers. Furthermore, as said in *Anderson's Black Rock v. Pavement Co.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258, such matters as commercial success do not make patentability without invention.

It is also interesting to mention at this point that the Patent Office did not consider the University of Maryland publications, the Hoerner book disclosing da Vinci's knowledge of the effect of a baffle on air flow, the Hornke patent (DX–D16) showing a snowplow shaped deflector, nor numerous U.S. bug deflector patents which show deflectors of different shapes, such as DX–D0 and D10. It is also interesting to consider that Mr. Saunders admitted (R 1173) that he knew of the bug deflector prior art before filing the applications for the patents in suit, but did not disclose them to the Patent Office during the prosecution of the applications for the patents in suit (R 1175). He also admitted that he examined the University of Maryland reports (R 1173), which review of his notes (R 1181–7) revealed were made before filing the application for the '876 patent (R 1178). He also admitted considering literature before the application for the '876 patent was filed, but did not reveal it to the Patent Office (R 1188). Furthermore, Mr. Saunders testified that he knew that bug deflectors were in common use before the January 31, 1964 date of filing the application for the '876 patent (R 1189), and that it was his understanding that such bug deflectors caused a separated flow of air so that it would not strike the windshield (R 1190).

The decisions in *Uarco v. Moore*, 440 F.2d 580 (7th Cir. 1971); *Illinois Tool v. Sweetheart*, 436 F.2d 1180 (7th Cir. 1971); *Malsbary Mfg. Co. v. Ald, Inc.*, 447 F.2d 809 (7th Cir. 1971); and *Reese v. Elkhart*, 447 F.2d 517 (7th Cir. 1971) are cited. The decision in each of these cases is readily distinguishable from the facts in this present case.

In *Uarco v. Moore*, 440 F.2d 580, involving a patent for a continuous form sealed

stuffed envelope assembly, the court found that a new combination and arrangement of parts producing a new and unobvious result which had an "effect greater than the sum of the several effects taken separately" existed.

In *Illinois Tool v. Sweetheart*, 436 F.2d 1180, the patent at issue involved a new combination and arrangement of the parts of a nestable plastic drinking cup for use in an automatic dispensing machine, which cup was constructed to facilitate separation of the bottom cup from a stack in an adverse environment of heat and humidity, despite a tendency of the stacked cups to jam. Here the court found the existence of a "synergistic" effect which increased the effectiveness of one of the elements of the construction and successfully achieved something denied the marketplace in the past. The court also stated:

Moreover, we are persuaded that this feature was the source of the functional success of '360 because it rendered the cups virtually invulnerable to damage and wedging under reasonably expectable conditions of shipment and use."

In *Malsbary Mfg. Co. v. Ald, Inc.*, 447 F.2d 809, the majority of the Court of Appeals considered the prior art and found that a new combination and arrangement of parts not taught by the prior art made possible an automatic car washing spray apparatus which efficiently and safely cleaned the top, sides and ends of an automobile without requiring the presence of an operator. In other words, the court found a new and unobvious combination of parts of an apparatus which had new and unexpected results; namely, operation without presence of an operator.

Judge, now Mr. Justice, Stevens dissented and discussed his understanding of the intent and meaning of Congress as to what is obvious under 35 U.S.C. He considered the alternatives to be: (1) what was obvious to an actual artisan; and (2) what would have been obvious to a hypothetical artisan who, having all of the prior art at hand, set out to design an improved car washing machine. Judge Stevens thinks Congress in-

tended the courts to follow the second approach. Any consideration of Section 103 other than that approved by Judge Stevens would make Section 103 meaningless, since Section 103 contains no guide as to which of numerous persons skilled in the art but of different degrees of skill and knowledge of the art, prior patents, prior uses and prior publications should be chosen as a judge. Furthermore, it is common practice in patent litigation to refer to patents which the Patent Office has not considered in connection with the application for a patent in suit to prove that the grant of a patent was an error. The patentee could not be the judging artisan because of his self-interest.

The application for a patent "requires the highest degree of candor and good faith". *Kingsland v. Dorsey*, 338 U.S. 318, 319, 70 S.Ct. 123, 124, 94 L.Ed. 123 (1949). Patent applicants have an "uncompromising duty to report to (the Patent Office) all facts concerning possible fraud or inequitableness underlying the applications in issue". *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 818, 65 S.Ct. 993, 999, 89 L.Ed. 1381 (1945).

*Reese v. Elkhart*, 447 F.2d 517 (7th Cir. 1971), involved a patent for a trailer hitch of the type using spring bars, which entailed a new combination and arrangement of cooperating cams and cam followers with other parts to produce new results, including resisting side-sway of the vehicle and improving control of the vehicle in making a turn by producing forces which tend to tilt the towing vehicle inwardly while traversing a curve, thus stabilizing a tractor-trailer vehicle and overcoming problems which had long existed in driving such vehicles.

None of these decisions cited by Plaintiffs is pertinent to the facts in this case where the combination of vehicle and deflector to produce air drag reduction and fuel economy was old as taught by Stamm and the University of Maryland reports, and no new, unusual or synergistic result was proven to exist.

## The Infringement Issue

■ It is fundamental that if a patent in issue is invalid the question of infringement becomes moot. *Faulkner v. Baldwin Piano & Organ Co.*, 189 USPQ 695, 716 (N.D.Ill. 1976). It is submitted that invalidity of the Saunders' patents, for the reasons discussed above, is clear, so that the court can summarily dispose of the patent infringement issues in this litigation without considering details of the defenses offered. However, the issue of infringement will be discussed here briefly.

The Defendants' deflector (DX–AA) has a shape resembling a snow plow, having a center ridge portion extending upwardly in a concave curve from its lower edge to its upper edge, and having two angularly disposed side portions, each presenting a concave forward face, said portions being disposed at an angle to provide a V-shape. The unit is mounted to be adjusted as to angle of inclination on a truck cab and thus adjustable in height (R 1311), and is spaced above a truck cab from four inches to five and one-half inches (R 1007).

Defendant Robert Geiger first saw a Canadian drag reducing device in March or April 1973 which looked like a ski slope (R 625). When he decided to produce and market a deflector, he determined that it should be made with a snowplow configuration (R 629) as being better than the Canadian Unit (R 633).

Mr. Geiger did not become aware of the patents in suit until the summons in this action was received, there having been no formal notice of infringement from Plaintiffs to Defendants previously (R 668).

Defendants' products are made in two models, TT–1 and TT–2 (R 638), with a TT–3 model having a foldable bracket assembly, but otherwise like the TT–1 (R 651). The two sizes of Defendants' deflector serve all applications, whereas the R–W product licensed under the Saunders patents is produced in 13 sizes at two-inch increments to fit all common U.S. truck-trailers, and for trucks only is made in 15 sizes (R 175).

Mr. Geiger determined upon the two sizes by checking the bug patterns experienced with use of the device (R 683, 714). Mr. Geiger had had experience with a bug deflector on a 1962 Buick (R 1272).

Defendants' device is 53–54″ wide, whereas the Plaintiff's licensed device is 68″ wide. Defendants' device nevertheless deflects air around the sides of a 96″ trailer (R 1310). Defendants' device is not as tall as the Plaintiffs' licensed device, but still deflects air upwardly over the top of a trailer (R 1310).

Compared to the claims of Saunders '876 patent, Defendants' accused device is forwardly *concaved* in a horizontal plane rather than forwardly "convexed" as defined in Claims 1 and 2 of the '876 patent. Defendants' device does not have its lower edge in "air impervious relation" with the cab roof as specified in Claims 3 and 4 of the '876 patent, and air can and does flow between the bottom of Defendants' deflector and the top of the cab, as found by Plaintiffs' witness Professor Smith in a test (R 504). Defendants' device when mounted on a single chassis truck is not required to be mounted adjacent the forward edge of the cab of the truck at the top of the windshield as specified in the claims of Saunders patent '131. Defendants' device does not require the ratios and dimensions specified in the claims of both Saunders patents, as was admitted by Mr. Saunders (R 1202–1204).

These differences and others in Defendants' devices, as compared with the claims of Plaintiffs' patents supported the grant of Patent No. 3,947,065 to Defendant Robert G. Geiger.

■ Infringement of a patent is avoided where one element of a claimed combination is avoided. *Minnesota Mining & Mfg. Co. v. Permacel-LePage's, Inc.*, 334 F.2d 820 (7th Cir. 1964); *All States Plastics Mfg. Co. v. Weckesser Co.*, 362 F.Supp. 94 (N.D.Ill. 1973).

■ The fact that Defendants' products achieved the objects defined in the Saunders patents, or the same result, is not

determinative of infringement. *Feed Service Corp. v. Kent Feeds, Inc.*, 528 F.2d 756 (7th Cir. 1976).

■ Considering the differences between the Defendants' accused devices and those of the patents in suit, and the differences in results achieved by the use of a smaller shield than required for the patented device by the limitations of the patent claims compels the conclusion that Defendants' device does not infringe the Plaintiffs' patents.

### Plaintiffs' Patents Are Subject To File Wrapper Estoppel

Consideration of the file wrapper record of proceedings in the Patent Office leading to the grant of the Saunders patent '876 (PX–2A), the file wrapper of the patent application of the '876 patent (PX–2B), and the file wrapper of the Saunders patent '131 (PX–4A), reveals that the Patent Office had no intention of granting to Mr. Saunders, and did not grant in his patents, a scope of protection of the '876 patent to cover the use of any deflector on a cab roof of a tractor-trailer to obtain drag reduction as Mr. Saunders contends (R 1239); nor a scope of protection under the '131 patent in suit to cover the use of a large deflector on the cab roof of a straight truck positioned and designed so that large drag reductions occur, as Mr. Saunders contends (R 1236).

The abandoned Saunders application Ser. No. 215,424 (PX–2B, page) contained as Claim 4:

"In combination with a truck body, an air deflector, means to support said deflector on the forward portions of said truck so that a current of air is deflected away from the following portions of said truck."

The Patent Office rejected this and other claims, and Mr. Saunders conceded in the rejection and abandoned his 215,424 application and filed applications for the patents in suit.

The file history of the '876 patent (PX–2A, page 18) originally contained the following claim:

"In combination with a tractor-trailer vehicle having a gap between the tractor and the trailer, an air flow deflecting shield mounted on said tractor for diverting the air flow relatively widely in a manner to avoid entry of the air stream into said gap thereby creating at least one low pressure air eddy in said gap to reduce the frontal air pressure against the trailer, said diverted air reattaching to the trailer at points spaced rearwardly of said gap."

This claim was rejected by the Patent Office and then cancelled by Saunders.

The application for the '131 patent as originally filed (PX–4A) contained a claim similar to Claim 1 of that patent, but omitting the portion thereof:

"the height of the wind shield plus the height of the baffle being equal to between 0.6 and 0.8 of the height of the body above said engine compartment".

The claims of the two Saunders patents were issued with additional limitations as relating to size and position, and to the forwardly convexed shape of the '876 patent. These features were admitted by Saunders not to be critical to accomplish drag reduction and fuel economy. Thus, Saunders admitted (R 164, 165, 1204) that an inclined flat plate positioned as specified in the patents could achieve a drag reduction benefit. Mr. Saunders also admitted that the patented device would function, and some drag reduction benefit would result from its use if the height of the shield was less than specified in the claims (R 1202), if the spacing of the shield from the trailer was less than that specified (R 1203), and if the width of the shield was less than specified in the patent claims (R 1204). Plaintiffs now seek an interpretation of the patents which would disregard the limitations specifically entered in the claims of the patents in suit in order to overcome the rejection of the Patent Office and to secure allowance of the patents in suit.

■ It is fundamental that, if a file wrapper history of a patent indicates the inclusion of a limitation in the claim necessary to obtain the issuance of the patent

**306**

over the prior art, the claim is limited. *Graham v. John Deere Co.*, 383 U.S. 1, 3, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220–221, 61 S.Ct. 235, 85 L.Ed. 132 (1940); *Smith v. Snow*, 294 U.S. 1, 16, 55 S.Ct. 279, 79 L.Ed. 721 (1934); and *Motion Pictures Patents Co. v. Universal Film Co.*, 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871. The principle has frequently been applied in decisions of the Seventh Circuit, as in *Colgate v. Lever Bros.*, 90 F.2d 178 (1937); and *Ekco Products Co. v. Chicago Metallic Co.*, 347 F.2d 453 (1965). In the latter case, Judge Duffy stated:

"Furthermore, a patentee that has narrowed his claim after rejection to secure allowance, is held strictly to the letter of the limited claims granted to him; by his amendment he recognizes the difference between the old claims and the new, and proclaims 'his abandonment of all that is embraced in that difference.'"

■ The doctrine of file wrapper estoppel applies in this case against the Plaintiffs and requires conclusion that Defendants have not infringed Plaintiffs' patents.

### The Trademark Issue

Plaintiff R–W alleges infringement of its trademark "Airshield" and a design covered by Reg. No. 887,396 for goods described as "wind deflectors for vehicles". The design feature is the shape of the letter "A" in larger type than the remaining letters of the mark with an arrow at the tip of the upper portion of the "A" which overlies the remainder of the word.

Defendant Air-Flo Co. applies the trademark "Air-Flo" and a design to its products. The design feature of Defendant's mark is a large letter "F" having a tail portion underlying the word "Air" and an upper portion overlying the letters "LO".

The only significant common part of the two marks is the word "Air". Defendant introduced at trial various registrations of trademarks for automotive products having the word "Air" as the first part thereof (DX–E1–6). Hence, "Air" lacks distinctiveness in the marks at issue.

The word "Shield" in Plaintiff's mark is strictly descriptive of its product. This is emphasized or made clear by a consideration of Saunders patent '876 in suit wherein the word "shield" is utilized to describe the patented shield repeatedly throughout; that is, a total of more than 50 times in connotations relating to air or wind.

■ Plaintiff's trademark registration was issued March 10, 1970. The summons in this action was issued April 8, 1974. Hence, Plaintiff's mark and registration had not become incontestable under 15 U.S.C. § 1065 at the time this action was filed, and the defects of Plaintiff's mark because of descriptiveness can be considered by this Court. Thus this case differs from *Union Carbide v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976) in which an incontestable mark was considered. Thus Defendants are not limited to the defenses enumerated in 15 U.S.C. § 1115(b) in challenging the validity, scope and claims of infringement of Plaintiff's mark.

Clearly "Airshield" has the same significance as the generic term "windshield" applied to automotive vehicles. Similarly, the arrow in the Plaintiff's mark is pictorially descriptive of the function of the R–W product.

■ The descriptiveness of Plaintiff's mark is significant under well established authorities which hold that descriptive marks are weak marks. *J. B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187 (9th Cir. 1975) stated:

In deciding whether there is a likelihood of confusion, an important consideration is whether the trademark seeking protection is "strong" or "weak". . . . A "weak" mark is a mark that is a meaningful word in common usage, see *Sunbeam Lighting Co. v. Sunbeam Corp.*, 183 F.2d 969, 972–973 (9th Cir. 1950), or is merely a suggestive or descriptive trademark, see *Majestic Mfg. Co. v. Majestic Electric Appliance Co., Inc.*, 172 F.2d 862 (6th Cir. 1949)."

In *John O. Butler Co. v. Oral B Co.*, 185 USPQ 594 (N.D.Ill.1975) Judge McLaren stated:

"The rule is well stated in this circuit that a package designation or trademark will not be found to be confusingly similar on the basis of having a common descriptive word or component. *Fleetwood Co. v. Hazel Bishop Co., Inc.*, 352 F.2d 841 (7th Cir. 1965); *Hesmer Foods Co., Inc. v. Campbell Soup Co.*, 346 F.Supp. 356 (7th Cir. 1965).

"As the court stated in *Colburn v. Puritan Mills*, 108 F.2d 277 [377] (7th Cir. 1939), 'while willing to protect, by injunctive relief, any valid trademark against invasion by a competitor, courts cannot, and will not, permit the holder of such a valid trademark (particularly when, as here, it is descriptive) to extend the rights which arise therefrom to drive a competitor from a field open to him or to anyone else' 108 F.2d at 376 [378]."

█ Any consideration of the two marks in question, "Airshield" and "Air-Flo", makes clear that the predominant features of both marks are the words used therein. These two words are so different in their connotation and meaning that their use in trade is not likely to lead to confusion or mistake of customers. *Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.*, 357 F.Supp. 127 (N.D.Ill.1973); *Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Div.*, 261 F.Supp. 200, 204 (N.D.Ill.1966).

Many decisions exist which hold that marks with no greater similarity than the marks in question are not confusingly similar. See *Consolidated Cigar Corp. v. R. J. Reynolds Tobacco Co.*, 491 F.2d 1265, in which the court found that "Dutch Apple" for smoking tobacco does not so resemble "Dutch Masters" for cigars that confusion is likely. In *HMH Publishing Co., Inc. v. Lambert et al*, 482 F.2d 595 (CA 9 1973), the court held that "Playgirl" does not so resemble "Playboy" or "Playmate" that confusion is likely. In the latter case, the term "likely to confuse" under the Lanham Act was considered, stating:

"Infringement under the Lanham Act 'likely to cause confusion' test means that the average purchaser or customer would be likely to believe that the infringer's product' 'had some connection' with the product of the copyright owner. *Fleischmann Distilling Co. v. Maier Brewing Co.*, 314 F.2d 149, 155 (9th Cir. 1963).

In *American Home Products Corp. v. B. F. Ascher & Co.*, 473 F.2d 903 (CCPA 1973) the court held that "AyrTab" did not so resemble "Ayerest", both used for drug preparations, that confusion was likely.

A particularly pertinent decision was rendered in *Air Wick Industries, Inc. v. Alpkem Corp.*, 384 F.Supp. 1027 (D.C.Ore.1974), in which the court said:

"With respect to the strength or weakness of Plaintiff's stylized A and combination of the names 'Air' and 'kem' into 'Airkem', I am convinced that the stylized A or triangular mark is particularly weak and the combination name is only slightly less weak.

"Plaintiff's chosen name is descriptive— 'Air' for the odor reactant aspect of its business, and 'kem' to connote the use of chemicals as odor reactants, disinfectants, etc. This sort of nonwhimsical association is entitled to only limited legal protection."

The latter decision can well be applied to the present situation where, in Plaintiff's mark, the word "Air" refers to the air encountered by a vehicle in travel and the word "Shield" connotes the protection afforded by the product against resistance of oncoming air to the movement of a trailer, and the curved arrow design pictorially illustrates the air deflecting function of the device.

Defendants' mark "Air-Flo" differs in meaning, spelling and pronunciation from "Airshield". It does not connote protection from air pressure and only connotes air movement. The average purchaser considering the two marks would not be misled to associate the two marks together, and would appreciate that each mark designates a product from a source different from the other. Such consideration is verified in this case by the testimony of Mr. Fink, project

director for Chilton Resources, which conducted a study for R–W as to the potential market for air drag devices, and who stated that that survey gave no evidence of confusion between "Air-Flo" and "Airshield" (R 393).

Defendants' mark "Air-Flo" is not confusingly similar to and is not an infringement of the descriptive and weak mark "Airshield" of R–W.