**NATIONWIDE CHEMICAL CORPORA-TION, a corporation, et al., Plaintiffs-Appellants,**

v.

**Wilburn T. WRIGHT, an Individual, et al., Defendants-Appellees.**

No. 76–2523.

United States Court of Appeals, Fifth Circuit.

Nov. 22, 1978.

George T. Mobille, George M. Sirilla, Washington, D. C., Ted R. Manry, III, Tampa, Fla., for plaintiffs-appellants.

Robert W. Duckworth, Herbert L. Allen, Orlando, Fla., for defendants-appellees.

Before JONES, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

This patent infringement suit involves a chemical product used on citrus groves for the control of rust mites, greasy spot, melanose, and scab, called "Hexide" by plaintiff patent holder and "Super-Hex" and "Hexaphene-LV" by defendants. Plaintiff Nationwide Chemical Corporation (and two companies allied in interest with Nationwide) brought suit on a patent developed by defendant Wilburn T. Wright and assigned to Nationwide when Wright was its president. Now in business for himself, Wright contended in the district court that Nationwide's patent is invalid, but, even if the patent is valid, that the amount of hexachlorophene his products use and the method of application are sufficiently different so as not to infringe. The district court held Nationwide's patent valid, but not infringed, in extensive findings of fact and conclusions of law reported in *Nationwide Chemical Corp. v. Wright*, 458 F.Supp. 828 (M.D.Fla.1978).

An extensive repetition of all the facts and law is unnecessary. We only focus here on the specific arguments brought to this Court on appeal, and only reflect on those facts needed to premise our decision. Defendants have not appealed the findings of patent validity and Nationwide's entitlement to various foreign patent rights. Nationwide does not contend that it established the existence of a trade secret. The sole issue on appeal is whether defendants induced infringement of Nationwide's United States Patent No. 3,420,936, specifically, Claims 1, 2, and 4 thereof.[1]

---

1. Claims 1, 2 and 4 of Nationwide's patent, entitled "Combating Bacterial and Fungal Plant Diseases with Hexachlorophene 2,2'-Methylene Bis-(3,4,6-Trichlorophenol)," are as follows:

1. The method for combating infections in plants growing in soil infested with pathogenic micro-organisms including bacterial spot (*Xanthomonas vesicatoria*) of peppers and tomatoes, angular leaf spot (*Pseudomonas lachrymans*) and downy mildew (*Peronospora cubensis*) of cucumbers, damping off (Rhizoctonia) of beans and cabbage, and damping off and sore shin (due to Rhizoctonia) of cotton, which comprises applying to the surfaces of said plant and to the surface of the ground adjacent thereto a composition containing as an active ingredient 2,2'-methylene bis-(3,4,6-trichlorophenol), said active ingredient being applied at an effective dosage of less than 4 ounces per acre.

2. The method according to claim 1 in which the composition is applied as an aqueous spray containing the 2,2'-methylene bis-(3,4,6-trichlorophenol) at a concentration within the range 100–1200 p.p.m.

\* \* \* \* \* \*

4. The method of protecting a crop growing in soil infected with parasite micro-organisms including bacterial spot (*Xanthomonas vesicatoria*) of peppers and tomatoes, angular leaf spot (*Pseudomonas lachrymans*) and downy mildew (*Peronospora cubensis*) of cucumbers, damping off (Rhizoctonia) of beans and cabbage, and damping off and sore shin (due to Rhizoctonia) of cotton, which comprises applying to the upper and under surfaces of the foliage of said crop and to the surface of the soil immediately under and adjacent the plants of said crop, a bactericidal composition containing as a principal ac-

It should be noted that this case must be approached as a straight patent infringement suit. Because of the inequity in Wright's having developed the patent, limited its claims, and then accomplished on his own the same purpose in a slightly different manner, we have carefully scrutinized this record for error. The result, however, must turn on whether or not defendants' actions would infringe, had they been those of an unrelated third party. We do not have before us a breach of trust action or any other theory which would affect the outcome of the case, other than patent infringement.

In brief, Nationwide's patent called for use of hexachlorophene "at an effective dosage of *less than 4 ounces* per acre," applied to "both the upper and under surfaces of the foliage of the plants *and to the soil adjacent thereto.*" Defendants' products called for use in amounts *greater than 4 ounces per acre, only to the surface of citrus plants.* This difference was found to be sufficient to prevent infringement.

Judge Krentzman gave three independent grounds for his finding of noninfringement. *First,* he found that Nationwide had "specifically and intentionally limited the claims to 'less than four ounces per acre' in the face of a long and continued rejection by the Examiner" of Nationwide's application. Accordingly, he held that Nationwide was estopped by the doctrine of file wrapper estoppel from extending its coverage to dosages of hexachlorophene of greater than 4 ounces per acre. 458 F.Supp. at 839 (Conclusion of Law E).

*Second,* he concluded that "the amendment of the claims in [Nationwide's] application to include the limitation to the treatment of specific pathogenic micro-organisms for specific plants constitutes an intentional limitation of the claims in order to avoid the prior art relied on by the Examiner and to secure allowance of the claims in question." In addition, Nationwide had ar-

gued before the patent office that the application of hexachlorophene to different plants was unpredictable. This was confirmed by the trial testimony of various expert witnesses. For these reasons, the court held that the doctrine of file wrapper estoppel prevents Nationwide from claiming that its patent covers use on pathogenic micro-organisms attacking *citrus,* regardless of the dosage of hexachlorophene applied. *Id.* at 839 (Conclusions of Law E and F).

*Third,* Judge Krentzman ruled that infringement was not proved because there was no evidence that defendants had induced anyone to apply defendants' products "both to the upper and under surfaces of the foliage of the plants and to the soil adjacent thereto," as required in Nationwide's patent claims. *Id.* at 840 (Conclusion of Law G).

We affirm on the basis of the first and third grounds above, that is, that file wrapper estoppel prevents plaintiffs from claiming coverage for dosages of hexachlorophene greater than 4 ounces per acre, and that plaintiffs failed to prove that defendants instructed application of their products to the soil adjacent to the plants. We do not reach the question of whether file wrapper estoppel prevents plaintiffs from claiming coverage for use of hexachlorophene on citrus. With this limitation, we adopt Judge Krentzman's excellent opinion.

We think it might be useful, however, to supplement Judge Krentzman's opinion with a comment or two of our own.

I. *Application to the Surface of the Ground Adjacent to the Plant Has Not Been Proven*

Nationwide's patent claim clearly requires hexachlorophene to be applied "to the surfaces of said plant *and to the surface of the ground adjacent thereto* " (emphasis added). The patent specifications show that application to the soil adjacent to the

tive ingredient, 2,2'-methylene-bis-(3,4,6-trichlorophenol) immediately after the primary bacterial infection period, said composition

being applied at an effective rate of not more than four ounces per acre.

\*     \*     \*     \*     \*     \*

plants was an important step in Nationwide's invention:

> The purpose of this invention is to provide simultaneous control of both foliage diseases which attack the plant *and also control of soil-borne diseases* which attack the same plants.

> .     .     .     .     .

> An important object of this invention is to provide novel contact-type nonphytotoxic compositions of matter for combating and controlling diseases or infections of growing plants by the application, of my novel compositions as a spray of dust, *to the soil in which the plants are growing* and to the plants themselves.

> .     .     .     .     .

> The importance of control of the harmful bacteria in the surface layer of soil not only immediately surrounding the growing plants but also in borders of fields surrounding the plants and along adjacent road sides and the like has been demonstrated by my investigations and experiments.

(Emphasis added). In addition, one of plaintiffs' expert witnesses testified that if hexachlorophene were applied to the plant and also applied to the ground, there would be a "much better chance of controlling the disease" then if just one *or* the other method of application were used. He explained the reason for this to be that the diseases are caused by soil-borne micro-organisms, which spend part of their life cycle in the soil, so that treating the soil significantly reduces the number of disease carrying organisms.

■ A patent is not infringed where any of the steps which constitute the patented method or process is omitted. *See, e. g., Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 351 (9th Cir. 1963), *cert. denied,* 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964); *Great Lakes Carbon Corp. v. Continental Oil Co.*, 219 F.Supp. 468, 475 (W.D.La.1963), *aff'd per curiam,* 345 F.2d 175 (5th Cir.), *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); 4 A. Deller, Deller's Walker on Pat-

ents § 251, at 144 (2d ed. 1965). It is clear that defendants' products were applied to the surface of citrus plants. In order for Nationwide's patent to be infringed, however, defendants' products must be applied to the soil adjacent to the plant as well. Plaintiffs do not dispute this. Rather, they argue that contrary to the district court's finding of fact (31) and conclusion of law (G), there was evidence in the record that defendants' products were applied to the soil adjacent to the plants.

■ We have reviewed the entire record, and find no evidence in the record that defendants' products were ever applied directly to the soil adjacent to the plants. Indeed, the only evidence is to the contrary. Defendant Wright testified that Hexachlorophene-LV "is prepared solely for aerial application." The labels and instruction data for both Hexachlorophene-LV and Super-Hex call for aerial spray application to the plants.

Nationwide, however, asks us to infer that "[s]uch aerial spray application *inherently* leads to treatment of the adjacent soil as well," thus constituting indirect evidence that defendants' products were applied to the soil. There is no evidence in the record to support any such assumption, nor is the conclusion so self-evident that we could take judicial notice of it. Indeed, as defendants counter, if the plants' leaves are sufficiently thick, aerial application would *not* result in application of the product to the surface of the ground adjacent to the plant. In the absence of any evidence in the record to support the assumption urged on us by plaintiffs, we do not believe that aerial application leads to the application to the adjacent soil intended by Nationwide's patent and necessary for it to be infringed.

We need also remember that the trial court's finding of fact is protected by Rule 52(a), Fed.R.Civ.P., and cannot be overturned on appeal unless clearly erroneous. *See, e. g., Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 867 (5th Cir.), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973). A record review reveals that the trial court's finding that "plaintiffs present-

ed no proofs which establish that users of defendants' products on citrus were applying these products directly to the surface of the surrounding soil, or that the foliage thereof indirectly caused such application to the soil surface" (Finding of Fact 31, 458 F.Supp. at 836; *see also id.* at 840, Conclusion of Law G), is not clearly erroneous. The court's conclusion that plaintiffs' case of inducement of infringement has not been proven is affirmed.

II. *The Doctrine of File Wrapper Estoppel Limits Nationwide's Patent to Dosages of "Less Than Four Ounces Per Acre"*

Nationwide argues that the "less than 4 ounces per acre" limitation was inserted into the amended claims only to point out the difference from the high dosage, 48 ounces per acre of the prior art (the Potato Journal article). Thus, Nationwide contends that its invention covers all "low dosages" of hexachlorophene, not just dosages of "less than 4 ounces per acre" as found by the district court. In support of its argument, Nationwide cites our cases which say that "an applicant should not be presumed to have made a disclaimer broader than necessary to yield to the actual challenge to his claim." *Ziegler v. Phillips Petroleum Co.,* 483 F.2d 858, 871 (5th Cir.), cert. denied, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973); *Hunt Tool Co. v. Lawrence,* 242 F.2d 347, 354 (5th Cir.), *cert. denied,* 354 U.S. 910, 77 S.Ct. 1296, 1 L.Ed.2d 1428 (1957).

Nationwide concedes that it had to insert *some* dosage limitation in order for its patent claims to be accepted. This is especially obvious when it is realized that Nationwide withdrew the grandparent application and submitted the parent application with its "less than 4 ounces per acre" limitation immediately after a rejection by the Examiner in which he noted that

With regard to the proportions involved, it must be noted that applicant's claims either fail to recite proportions or are drawn to proportions both lesser than and greater than that reported in the refer-

ence publication [the Potato Journal article]. *Obviously the proportions are not critical.*

(Emphasis added). Thus, *some* dosage limitation was required "to yield to the actual challenge to [Nationwide's] claim."

If the Nationwide had amended its claim to say that it claimed the use of hexachlorophene in "low dosages," perhaps its claim would have been allowed by the Examiner; but by the same token, perhaps it would not have been allowed. If that was not allowed, perhaps the Examiner would have allowed a limit of less than 8 ounces per acre, or perhaps less than 5 ounces per acre. We do not know. That is the problem with Nationwide's argument. It has a certain surface appeal, because of the large gap between the prior art reference of 48 ounces per acre and Nationwide's limitation of 4 ounces per acre, and the closeness of Wright's dosages to Nationwide's. The difficulty, however, is that it would cause us to place ourselves in the Examiner's place, and either guess what he would have allowed if faced with the question, or substitute our judgment for that of the Examiner, who is the expert in this field.

The simpler solution is to look at the question of whether the patentee had to insert a limitation in the broader sense. It is clear beyond dispute that Nationwide had to put *some* limit on its dosages of hexachlorophene. In that sense, its amendment was required by the Examiner's rejection of Nationwide's earlier claims based on the prior art. Since *some* dosage limitation was required, we do not ask if the *specific* 4-ounce limitation itself was required. For whatever reason, that is the embodiment of its claim which Nationwide chose. Having chosen that limitation, Nationwide is estopped from asking the Court to give it a broader coverage than it chose for itself.

The case most nearly on point is not *Ziegler* or *Hunt, supra,* but *Ekco Products Co. v. Chicago Metallic Manufacturing Co.,* 347 F.2d 453 (7th Cir. 1965). That case involved a product patent for a tin plate baking pan. Ekco originally "had claimed its product broadly as a baking pan having

a steel base, an overlying layer of iron-tin alloy, a further layer of metallic tin, and a surface layer of olive-green tin oxide. There had been no claim that called for any specific thickness of iron-tin alloy." *Id.* at 454. Ekco's claim was rejected, and it amended its claim so it "was limited to pans in which the thickness of the iron-tin alloy was 'approximately 10 to 15 micro-inches.'" *Id.* The court noted that the only difference between Ekco's patented pan and the prior art, which had a thicker alloy layer, was the "approximately 10 or 15 micro-inches" thickness limitation. *Id.* at 455. The purportedly infringing pan had an iron-tin alloy somewhat thicker than that in Ekco's patent, but otherwise the pan was identical to Ekco's. *Ekco Products Co. v. Chicago Metallic Manufacturing Co.,* 321 F.2d 550, 555 (7th Cir. 1963) (prior opinion in same case), *cert. denied,* 375 U.S. 970, 84 S.Ct. 490, 11 L.Ed.2d 418 (1964). The court held that because of the doctrine of file wrapper estoppel, Ekco's patented pan was not infringed. The court did not look at how close the thickness of the purportedly infringing pan's alloy was to Ekco's, or whether Ekco could have inserted a less restrictive thickness limitation when it had amended its claim. Rather, the court "look[ed] no further than to learn whether the patentee was forced to introduce such element to avoid rejection." 347 F.2d at 454. Where such is the case, the patentee "is held strictly to the letter of the limited claims granted to him; . . . ." *Id.* at 455. *See also Taylor-Reed Corp. v. Mennen Food Products, Inc.,* 324 F.2d 108, 111 (7th Cir. 1963); *Aluminum Co. of America v. Thompson Products, Inc.,* 122 F.2d 796, 800 (6th Cir. 1941) (chemical alloy patent employing 0.5% to 7% nickel not infringed by defendant's use of a nickel range of 0.04% to 0.45%, where the field was crowded, and the minute percentages of nickel used by defendant had no substantial effect upon the alloy); *Saunders v. Air-Flo Co.,* 435 F.Supp. 298, 305–306 (N.D.Ind.1977).

We agree with the Seventh Circuit. Since Nationwide was forced to introduce *some* dosage restriction, and chose the "less than 4 ounces per acre" restriction as the embodiment of its claim, we look no further, and hold Nationwide "strictly to the letter of the limited claims granted" to it. This case, as did *Ekco,* involves a situation where the purportedly infringing process employed a dosage that fell between the limitation in the patent in suit and the prior art. Rather than reexamine the application to decide what in that gap the Examiner might have allowed the patentee to claim, we strictly limit the patentee to what he claimed. The *Hunt-Ziegler* presumption, *supra,* that the patentee did not make a disclaimer "broader than necessary to yield to the actual challenge to his claim," has no application in the present situation.

The *Hunt-Ziegler* presumption does apply in two different situations. In situations where the purported infringer falls on the other side of the patent in suit from the prior art, the patent in suit may be entitled to some slight range of equivalents. Thus, if Nationwide had limited its claim to a dosage of 2 to 4 ounces, and Wright had used 1 ounce, the *Hunt-Ziegler* presumption *might* apply and entitle Nationwide to a limited range of equivalents below 2 ounces. *Cf. Kolene Corp. v. Motor City Metal Treating, Inc.,* 440 F.2d 77 (6th Cir.), *cert. denied,* 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971), *affirming* 307 F.Supp. 1251 (E.D. Mich.1969) (where the prior art used a 15% cyanate bath, Kolene's patent employed "'between about 25 and 40% cyanate,'" and defendant used a 50% cyanate bath, defendant was held to have infringed for various reasons, including that the Examiner had not required the maximum level to be inserted in order to overcome the prior art).

The second situation where the *Hunt-Ziegler* presumption may apply is that exemplified by *Ziegler* itself, that is, situations where the limitation in the claim was *not* inserted to overcome any prior art. Thus, in *Ziegler,* Ziegler amended its patent claim for a catalyst by adding the language, "essentially consisting of" two components. This amendment was inserted to overcome the Examiner's objection that the original claim was too broad and did not disclose enough. 483 F.2d at 877. Phillips' catalyst

was composed of three components, including the two in Ziegler's claim. This Court held that Phillips' catalyst infringed Ziegler's patent, using the doctrine of equivalents. Since the Court found that there was nothing in the file wrapper to indicate that third components were being excluded, nor any prior art references requiring such a disclaimer, *id.* at 877, the Court held that Ziegler was not barred by the doctrine of file wrapper estoppel. It is in this context that *Ziegler's* language that "an applicant should not be presumed to have made a disclaimer broader than necessary to yield to the actual challenge to his claim," *id.* at 871, must be understood.

For the reasons discussed in the portions of the district court's excellent opinion which we have adopted, as supplemented by the above comments, we hold that defendants have not induced the infringement of Nationwide's patent.

AFFIRMED.