**JOHN ZINK COMPANY, Plaintiff-Appellee Cross-Appellant,**

v.

**NATIONAL AIROIL BURNER COMPANY, INC., Defendant-Appellant Cross-Appellee.**

No. 77–3071.

United States Court of Appeals, Fifth Circuit.

March 12, 1980.

Jack W. Hayden, Houston, Tex., Zachary T. Wobensmith, Philadelphia, Pa., for defendant-appellant cross-appellee.

James F. Weiler, Houston, Tex., James R. Head, Tulsa, Okl., for plaintiff-appellee cross-appellant.

Before GOLDBERG, FAY and ANDERSON, Circuit Judges.

FAY, Circuit Judge:

John Zink Company (Zink) brought this action against National Airoil Burner Company, Inc. (NAO) for infringement of claims 5, 6, 8, and 10 of Zink's patent number 2,779,399 ('399 patent), for a Flare Stack Gas Burner,[1] issued January 29, 1954. NAO denies that it infringed the patent, and claims that the patent is invalid and obvious in view of the prior art. NAO appeals from a judgment of $100,000 for Zink. Zink cross-appeals contesting the amount of damages. We affirm the district court's judgment.

## I. FACTS

The subject matter of the '399 patent is a flare stack burner tip design for smokeless emission of waste gases. The petroleum refining and chemical process industries must periodically dispose of large quantities of hydrocarbons and inflammable materials, known in the industry as waste or dump gases. These waste gases are released through tall stacks and burned. Burning these materials is the only efficient means of disposal, yet the combustion must occur under stable conditions so that the burning gas is not extinguished by wind or rain, causing release of unburned toxic and inflammable gases into the air.

In the early 1950's, many communities adopted antismoke ordinances, which confronted the industries with the additional problem of burning their waste gases without smoke. Socony-Vacuum Oil Company

---

1. Zink originally also claimed infringement of its patent No. 3,134,424, but that claim has not been pursued. NAO originally claimed the '399 patent was invalid for vagueness. The district court found otherwise, and NAO has not pursued this point on appeal.

asked Zink to design a smokeless flare for the tip of their smoke stacks. Earlier design attempts had failed because the extreme heat from burning gas would melt and cant the tip of the stack. The attempts of John S. Zink and Robert D. Reed to solve the problem led to the '399 patent.

During combustion, hydrocarbons often separate into the carbon and hydrogen molecules, a process called "cracking." The hydrogen burns rapidly, but the carbon burns very slowly. Black smoke results when unburned carbon escapes into the air. Dr. Reed learned that when the hydrocarbon waste gas has a higher molecular weight ratio of hydrogen to carbon, less smoke is emitted.[2] This principle led to the notion of increasing the amount of hydrogen in the burning operation to increase the ratio. Steam vapor was used to supply the hydrogen. Dr. Reed concluded that for the reaction to occur the steam had to be injected at high speed above and into the emerging and already burning gases.

Figure 2 is a bird's-eye view of the plaintiff's invention; figure 3 shows a cross-section. Waste gases pass up the tube, emerge at the end of the tip (item 21), and are ignited by an external pilot (items 23, 26, 27). The manifold (item 46) encircles the tube and holds in place several nozzle pipes (items 48), which are slanted radially inward. These nozzles and other nozzles in the center of the tube (items 54, 56) inject steam into the gases as they combust.

Zink's invention permitted smokeless combustion of waste gases. Because the high velocity steam nozzles were open to the atmosphere, they also inspirated outside air into the burning gases which aided the burning, increased the heat, and improved efficiency in converting steam to hydrogen. The design also eliminated the need for a surrounding wind protective shroud. The district court found that Zink's design was the first to reveal and teach the concept of injecting steam from a plurality of points into the gases as combustion occurred above the point where waste gases emerged from the tip of the tube.

In 1970, NAO developed and marketed three smokeless flare burners. Zink brought this action claiming NAO's burners infringed the '399 patent. The district court, sitting without a jury, held the patent valid and infringed. The court then awarded $100,000 damages.

## II. OBVIOUSNESS

### A. Legal Standards

■ To receive a patent, the applicant must show that the invention is novel, useful, and nonobvious. 35 U.S.C. §§ 101, 102, 103 (1976). NAO first defends the infringement action by claiming the '399 patent is invalid because it was obvious. A patent cannot be issued

> if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

*Id.* § 103. Obviousness is a question of law; its resolution, however, rests on factual inquiries. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763 (5th Cir. 1980); *Robbins Co. v. Dresser Industries, Inc.,* 554 F.2d 1289 (5th Cir. 1977). The factual inquiries are reviewed under the clearly erroneous standard. Fed.R.Civ.Proc. 52(a); *Cathodic Protection Service v. American Smelting & Refining Co.,* 594 F.2d 499, 506 (5th Cir. 1979). The factual inquiries are: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the art. *Graham v. John Deere Co.,* 383 U.S. at 17, 86 S.Ct. at 693; *Control Components, Inc. v. Valtek,* 609 F.2d at 766; *Parker v.*

---

2. For example, methane (CH 4), which has a molecular weight ratio of four hydrogen to twelve carbon, or .33, burns without smoke, but ethylene (C 2H 4) with its ratio of .166 emits dark, dense smoke as it burns. Extreme heat is needed for the chemical change from a low-weight ratio hydrocarbon to a high-weight one.

*Motorola, Inc.* 524 F.2d 518, 531 (5th Cir. 1975). Secondary considerations include "[s]kepticism of experts, commercial success, long felt but unsolved needs, and the failure of others." *Control Components, Inc. v. Valtek,* 609 F.2d at 766; *citing United States v. Adams,* 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

■ When the patent involves a combination of elements found in prior art, the claims are scrutinized "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). *See Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976). The combined elements must perform a new or different function, produce "unusual or surprising consequences," or cause a synergistic result. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969); *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. at 151–53, 71 S.Ct. at 129–30; *Parker v. Motorola, Inc.,* 524 F.2d at 534. Long-accepted factors that deter investigation, known disadvantages which discourage the search, and disbelief by experts in the combination's success are indications of a patentable combination. *United States v. Adams,* 383 U.S. at 52, 86 S.Ct. 714.

■ Generally, patents are presumed valid and the burden falls on the challenger to prove invalidity. 35 U.S.C. § 282 (1976). *See White v. Mar-Bel, Inc.,* 509 F.2d 287 (5th Cir. 1975); *Waldon, Inc. v. Alexander Manufacturing Co.,* 423 F.2d 91 (5th Cir. 1970). The burden is more than a mere preponderance of the evidence. *Parker v. Motorola, Inc.,* 524 F.2d at 521. Nevertheless, the presumption of validity is not conclusive, *Robbins Company v. Dresser Industries, Inc.,* 554 F.2d at 1290, and it can be weakened when the patent office has not considered all the prior art. *Parker v. Motorola, Inc.,* 524 F.2d at 521.

### B. *Pertinent Prior Art*

■ Before turning to the scope and content of the prior art, we must ascertain which of the some twenty-six specimens NAO submitted are relevant prior art for the '399 patent. The district court made the following findings:

16. A review of the prior art cited by the Defendant reveals the lack of relevance or materiality of such art and demonstrates that, because of the nature of the invention and the usage requirements in the waste gas flare industry, only the references of Schellentrager et al, Patent No. 2,506,972, and its companion article in Petroleum Processing, July 1950, pages 736–738; Rodman et al, U.S. Patent No. 2,537,091; Clevenger et al, U.S. Patent No. 2,661,798; Campbell et al, U.S. Patent No. 2,802,521, and its companion article in the Petroleum Processing, September 1950, pages 965–968; British Patent No. 430,738; and Green U.S. Patent No. 1,561,848 are pertinent.

17. The remaining patents cited by the Defendant are in many ways irrelevant and not considered pertinent, and deal, for example, with processes unrelated to smoke suppression using steam in burning gases. Many were concerned with burning after combustion has taken place in locomotives, smoke stacks, chimneys, or steam boilers.

Findings of Fact ¶¶ 16–17, Record at 203. The statute requires a search of "the art to which said subject matter pertains." 35 U.S.C. § 103 (1976). This circuit has interpreted this phrase as including prior art in analogous fields. *Cathodic Protection Service v. American Smelting & Refining Co.,* 594 F.2d at 507–08. It is therefore necessary to review the subject matter of the prior art proffered by NAO.[3]

---

3. In its pleadings NAO claimed it would rely on the Bruneau, No. 2,043,982, Smith, No. 72,7011, Elster, No. 2,480,230, and Schwan, No. 1,807,-092 patents as prior art. Bruneau and Smith, however, are not in the record. The appellant mentions Elster only once in passing. Zink claims Elster deals only with ignition systems. We feel the relevance of Elster was amply and correctly accounted for in the patent office. Appellant cites Schwan only in relation to igni-

Of the patents NAO claims the district court should have considered,[4] three were considered by the patent office and were not found to render the '399 patent obvious. These patents are Hanke, No. 919,309; Neff, No. 160,785; and Lampe, No. 2,433,-463. The Lampe patent deals with nonanalogous spraygun art.[5] The Neff patent concerns a dissimilar arrangement for flame retention in face of wind. The German Hanke patent concerns burning of smoke, not smokeless burning. Upon review of the record, we hold that the conclusions of the Patent Examiner and the district court are supported by substantial evidence and are not clearly erroneous.

In determining whether the other inventions are "prior art," one must remember the nature of petroleum flare stack operations. The heat, fuel, weather, and structure conditions of a waste gas flare are vastly different from those of locomotives, steam boats, boilers, and spray guns. Brown, No. 2,677,156, is a patent for a "Concurrent Vaporizing Flare Burner" for use in orchards and citrus groves. It does not concern smoke or steam, nor does it claim to have an outer cooling tube or continuous ignition. The gas and steam injection rates are controlled by the gas flow, not by valves as in the '399; the forced movement of cooling air is by draft, not by force of steam. The district court was not clearly erroneous in rejecting this patent as prior art.

Copeland, No. 62,397, covers "Combination of Air and Steam Jets to Promote Combustion—Steam Boiler Furnace." The steam injected within the shrouded stack increases the draft.[6] The patent subject is not analogous to the '399. The district court correctly held that the patent was irrelevant.

Couch, No. 610,856, is labelled "Locomotive." A steam ring inside the locomotive stack supplies a draft and suppresses smoke after combustion. The Couch patent is designed to deflect heat and precipitate cinders in locomotive exhaust. The district court was not clearly erroneous in rejecting this patent as prior art.

Dinardo, No. 1,657,375, covers a "Smoke Consumer." The purpose is to precipitate dust and soot from smoke. Ferguson, No. 2,365,945, describes a "Flame Retention Nozzle." The design does not at all resemble the '399. The district court was not clearly erroneous in discounting these patents as prior art.

Price, No. 1,159,085, is entitled "Smoke Consuming Apparatus for Locomotives and

---

tion and flame retention. Reply at 2. Because claims on ignition were limited in the patent prosecution and because the relevance of Bruneau and Smith have not been pursued, we will not discuss these patents further. The district court did not err in finding them irrelevant.

4. Zink claims that the court did consider all of NAO's exhibits in making its findings based on the language in findings 15 and 18:

15. . . . Utilizing the prior art and, especially the most pertinent references, persons in the industry have constructed flare tips that were shrouded . . . . .

. . . . . .

18. The Court has carefully evaluated all this prior art and compared it to the design and use to which the patent is put . . . . .

Because the court's findings are ambiguous and because we find clear error in the conclusion on the Verner patent, we review all of NAO's exhibits.

5. To underscore the irrelevance and inaccuracy of some of appellant's claims of prior art, consider the statements concerning the Lampe patent, No. 2,433,463. Appellant claimed the Lampe patent reflected a steam ring and taught ignition and flame retention in the face of wind and rain. Brief for Appellant at 21; Reply Brief at 2. The Lampe patent, however, concerns a spray gun designed to cause particles of material and sprays of adhesive to mix so that they adhere better on contact. It has no "steam ring" and has nothing to do with ignition, flames, wind, or rain. These are but a few of the misleading comparisons offered by NAO.

6. NAO states that several of the "prior art" patents provide steam supply inside the stack, obviating the '399 patent. Brief for Appellant at 20, citing Copeland, Couch, Price, Green, Seiders, Verner, Schellentrager, and Hanke. In all these but Seiders, the steam supply is in the stack and the steam emits below the tip, within the stack, not at the tip as in the '399. See Figure 3 at item 54. Seiders has an outside steam supply that enters the locomotive stack at a point below the tip. The point of emission and purpose of the inner supply differentiates Zink's '399 from the prior art.

Other Boilers." Aside from relating to nonanalogous art, the Price patent is designed only to lighten the color of the smoke with steam vapor and cause earlier precipitation of dust and soot particles. Seiders, No. 1,762,362, is also a "Locomotive Appliance." Its purposes are the same as the Price patent's, and it also claims to reduce fuel and steam consumption and to increase draft. Its design is quite dissimilar to the '399, and it is not relevant to smokeless burning.

Smith, No. 152,956, is an "Improvement in Steam-Blowers" for steamboats. The only claim is that periodic blasts of steam will help propel steam up the stack to reduce corrosion. The patentees do not claim smoke suppression or precipitation. Again, the steam ring is enshrouded within the stack.

A different Zink patent, No. 2,462,704, is a "Burner and Burner Nozzle." A review of the patent file history convinces us that the nozzle in this patent is not relevant to the claims of the '399.

The district court was not clearly erroneous in finding that these patents were not pertinent. One omitted from the district court's list of pertinent prior art, however, is clearly on point. The Verner patent, No. 2,761,496, is titled "A Flare Stack Apparatus for Burning Waste Gases." The article by Smolen in the publication *Petroleum Processing*, September, 1951, at 978–82, describes the Verner patent. The Verner patent was "pertinent"; however, any error by the district court on this point is harmless, because, as will be developed, the Verner patent does not include elements rendering the '399 patent obvious.

C. *Prior Art*

We turn now to the "pertinent" prior art. The Green patent, No. 1,561,848 (1925), is a "Gas Burner" for use with a firebox or or boiler, and was considered by the patent office. Appellant claims the Green patent teaches use of an upright stack carrying gas and a steam supply inside the stack. In the Green patent, a steam pipe and a surrounding gas pipe terminate between two funnel shaped spreaders providing a space for mixing and spreading gas, air, and steam. The design is dissimilar to the '399. With Green, the purpose of injecting steam is to furnish more oxygen to aid combustion and to distribute heat properly. The patent does not teach smokeless combustion, nor does it inject steam into burning gas.

Patent No. 2,506,972 for a "Flare Stack Tip" was granted to Schellentrager, et al., in 1950 and described in the July, 1950 issue of *Petroleum Processing*. July, 1950, at 736–38. Steam or compressed air mixes with outside air and enters the stack through spiderlike legs placed below the tip at an angle, causing the gas and steam-air to mix before ignition at the tip by a pilot, which is housed in a windproof jacket. The tip of the stack is protected by an annular plate. The '399 injects steam into burning gas without premixing and requires no protective plate. A flare tip of the Schellentrager design installed in Cleveland has been replaced with a '399 model because of excess heating of the parts, despite the use of heat resistant metals in its production.

The Rodman patent, No. 2,537,091 (1951), was considered by the patent office, and several of the features which NAO claims obviate the '399 were restricted in the patent office prosecution. Zink amended the patent claims' references to means of igniting waste gases by a plurality of pilots to avoid the old combination of pilot and stack. The Rodman patent has several external pilots around the tip of the stack. The pilots are inserted through a flame stop, much like the Schellentrager plate, which prevents the flame from travelling down and destroying the stack sides. The Rodman patent does not claim to perform in wind and rain and does not use steam. The '399 patent does not need a flamestop as Rodman does. Appellant asserts that the '399 is not the first to teach external burning. None of the prior patents, however, teach external burning when vapor is injected above the tip.

The novelty of the Clevenger patent, No. 2,661,798 (1953), is in the pilot burner and pilot igniter. Clevenger was concerned only with a pilot that could stay lighted in

the wind, yet the specifications warn that high wind may extinguish it. Clevenger does not concern smokeless burning.

The Verner patent, No. 2,761,496 (1956), and the accompanying Smolen article, cover a flare stack without an ignition system. Steam is injected below the tip in the stack center causing mixed gas and steam to be ignited at the tip for substantially smokeless burning. While the Verner tip is relevant, it does not inject steam into burning gas, and it does allow flames to travel down the sides and insides of the stack. Verner tips have been replaced by the '399 because of deterioration due to heat.

The Campbell patent, No. 2,802,521 (1957), and the accompanying article by Decker, describe a waste gas burner, the application for which was copending with the '399 patent.[7] Campbell is strikingly dissimilar to the '399. The top of the stack is capped so that gas is forced through vertical slits on the side. A manifold with port jets supplies steam, and the gases mix within a protective shroud. The shroud protects the burner from wind currents and provides a partial mixing chamber for gas and air. The '399 has no need for a shroud or mixing chamber and its means for injecting steam are different. The Campbell patent uses a John Zink pilot burner. Testimony at trial showed that the Campbell design was unsuccessful: the flare was heat damaged and replaced by a '399 design.

The British patent, No. 430,738, is entitled "Improvements in and Relating to Smokeless Combustion of Finely Divided Fuels." It concerns the injection of steam into an enclosed oil burning furnace. To the extent it is relevant at all, the British patent does not obviate the '399.

D. *Differences Between '399 and Prior Art*

■ The Zink '399 burner makes several advances over the prior art. First, despite the accepted practice of using shrouds in the industry, no shroud is needed to protect either the pilot flame from wind and rain or the top of the stack from heat. Rodman and the unsuccessful Schellentrager design both have plates at the top of the burner to prevent flames from travelling down the stack as the wind blows. The Clevenger inventor admits that his invention might extinguish. Those skilled in the art appear to have assumed that unshrouded exterior steam spray would extinguish, not encourage, the flare's flame; this is evidenced by the unsuccessful Campbell flare, and by the placement of the steam injection in Verner and Schellentrager. Long-accepted factors which discourage investigation into a combination of designs may be taken into account when determining obviousness. *United States v. Adams*, 383 U.S. at 52, 86 S.Ct. at 714.

The second major advance of the '399 is the concept and means for injecting steam into *burning* gas to cause a chemical reaction leading to smokeless burning. In all the inventions put forth by NAO, steam is used for one or more of these seven purposes: (1) to cause aspiration or drafts of air, (2) to precipitate soot and dust, (3) to move smoke up a stack, (4) to lighten the color of smoke emitting from a stack, (5) to cool the burning operation, (6) to separate the gas molecules to reduce cracking, and (7) to change the gases to ones not emitting smoke, such as carbon monoxide and methane. Aside from the '399, only the unsuccessful Verner patent claims to perform the seventh function, and only incidently to the main functions of inspirating air, reducing the combustion temperature, and separating molecules. The key to the '399 patent's success is that the steam is injected into burning gas, something that even the Verner patent does not do. Heat must be supplied, or the chemical change does not occur. In contrast, the Verner patent calls for a lowered combustion temperature. Ancillary results to the '399 steam design

---

**7.** Although the Campbell patent was granted after the Zink patent, the application for Campbell was filed two years earlier. Therefore, despite the secrecy protecting applications in the patent office, the Campbell patent is "prior art." *Hazeltine Research, Inc. v. Brenner*, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965).

were that more turbulence was created, more air was aspirated, no shroud was needed, more gas could be burned at once, and costs were decreased. The higher velocity of discharge of the waste gas also increased the draw of air, increased turbulence, and improved the smokeless burning operation. The steam also directed the flame upward, preventing deterioration of the stack, which added an eighth purpose to the use of steam in burning.

Another advance of Zink's patent over the prior art is the introduction of a cooling system. Steam from the encircling manifold (item 46) enters an outer air passageway (item 62) near the top of the burner (at item 64) causing an upward draft of air that cools the whole system and slows deterioration. Baffles (item 71) protect the pilot ignitors from the cooling air. Despite appellant's claims to the contrary, the prior art does not reflect this feature.[8]

None of these patents teaches the use of nozzles in the manifold which both inject steam and direct the flame in the open atmosphere. Even if, as NAO claims, all the elements of the '399 were present in the prior art (which they are not), the '399 combination for these new purposes removes it from the realm of obviousness.

Secondary considerations support the conclusion that the '399 is not obvious. Zink's own experts were unsure whether the invention would work. The '399 has been very successful, and Zink has started a new division for the sale of flare tips. Sales of flare tips represent about twenty million dollars in business. The '399 has replaced the work of others, including some of the flares argued to be prior art.

We conclude that the district court properly applied the law and was not clearly erroneous in finding the facts. The '399 patent would not have been obvious to one skilled in the art at the time of the invention.

## III. INFRINGEMENT

Before trial, the infringement issue was narrowed to whether the steam nozzles in the NAO structures, which are spaced above the upper ends of the tube, have end portions that direct steam radially inward into the burning combustible gas. See Figures 1 and 4. NAO contends that its steam nozzles, which are canted at an angle (see figure 1), create a swirling pattern which comes to a peak in an X-type of flow pattern, which differentiates the NAO stacks from the '399 design. Therefore, according to NAO, claims 5, 6, 8, and 10 of the '399 patent are not infringed. NAO also argues that file wrapper estoppel prevents Zink from utilizing the doctrine of equivalents to broaden its claims to include the basically tangential component of NAO's steam spray.

### A. Applicable Standards

In deciding infringement questions, the court first determines whether the accused device literally infringes the patent claims, read in light of the specifications. Seldom will a literal infringement be found. To protect patentees from devices with slight deviations that differ only in name, form, or shape, the courts have adopted the doctrine of equivalents. *Machine Company v. Murphy*, 97 U.S. 120, 24 L.Ed. 935 (1878). An accused device will be held to infringe "if it performs substantially the same function, in substantially the same way, to obtain the same result." *Id.* at 125. *See Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929). The breadth of the protection accorded under the doctrine is on a sliding scale depending on the nature of the invention. Pioneer patents are given the broadest protection, while small improvements are afforded fewer equivalents. Equivalency is determined in the context of the patent, prior art, and circumstances of the case. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950);

---

**8.** Appellant claims Campbell and Brown show outer cooling tubes with upward delivery of air. Brief for Appellant at 22. Neither patent utilizes its air passageways for cooling.

Rosen v. Kahlenberg, 474 F.2d 858, 867 (5th Cir. 1973). "Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform." Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. at 609, 70 S.Ct. at 857. An important consideration is whether those skilled in the art would have known of the interchangeability. Id. Equivalency is a question of fact and the trial court's balancing of the evidence will not be disturbed unless clearly erroneous. Id. at 609–10, 70 S.Ct. at 856.

 One check on the doctrine of equivalents, however, is the doctrine of file wrapper estoppel. Under this limitation, if during prosecution in the patent office, the applicant narrows, surrenders, or amends claims to meet objections of the examiner, the inventor cannot later recapture through the doctrine of equivalents that which he has eliminated from the claims. Graham v. John Deere Company, 383 U.S. at 33, 86 S.Ct. at 701; Exhibit Supply Co. v. Ace Corporation, 315 U.S. 126, 136–37, 62 S.Ct. 513, 518–19, 86 L.Ed. 736 (1942); Ziegler v. Phillips Petroleum Co., 483 F.2d 858, 870 (5th Cir.), cert. denied, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973). Mere surrender or amendment, however, does not totally bar use of equivalents. The estoppel applies only to that which was surrendered and the court must investigate what was given up to receive the patent. Ziegler v. Phillips Petroleum Co., 483 F.2d at 870. In at least two situations, an applicant will not be presumed to have made a disclaimer broader than was necessary to yield to the examiner's challenge. First, when one looks at the difference between the patent and the prior art, if the element in the accused device falls on the side of the pat-

ent, only a narrow range of equivalents may be applied. Nationwide Chemical Corp. v. Wright, 584 F.2d 714, 719 (5th Cir. 1978). For example, in Wright, the prior art required large dosages of the chemicals in dispute. The patent claimed dosages of less than four ounces. The accused chemicals required dosages of more than four ounces, so no equivalency was proper. Id. Second, when the claim's limitation is inserted to overcome some objection other than prior art, the presumption that the disclaimer will not be read more broadly than necessary will apply. Id. See Ziegler v. Phillips Petroleum Co., 483 F.2d at 810.

### B. The District Court Determination

The district court held that Zink had met its burden of proving infringement. The court stated, "The patented flare tip design is a pioneer invention, the novel simplicity of which should not be mistaken for imitation of prior art or obvious improvements upon the prior art." Because of its pioneer status, the court decided liberal construction under the doctrine of equivalents was appropriate. The court held that there was sufficient evidence that the accused devices directed steam radially inward into burning gas, and that at least claim 6 was infringed.[9]

### C. Literal Infringement

Zink claims that the NAO structures literally infringe the '399 patent. Because an NAO model directed steam radially inward, Zink claims that clearly at least part of the end portions of the NAO devices are directed radially inward. The district court did not, however, make a finding on literal infringement. From its discussion of the doctrine of equivalents, we assume the court implicitly held that the claims were not literally infringed. We uphold this finding.

9. The district court also stated:
14. Claim 5 is substantially like Claim 6 except that it includes the embodiment of a center steam which extends upwardly within the waste gas conducting tube, which feature is shown in the NAO drawings. Claims 8 and 10 are similar except that Claim 8 includes the element of "means for controlling

the volume of steam supplied to said manifold in accordance with the volume of gases moving upwardly in said tube." Claim 10 is similar to Claim 5 except that it includes additional functional language concerning the injection of the water vapor.
Judge Sterling did not specifically state, however, that those claims were infringed.

#### D. *The File Wrapper*

Because the infringement question turns on construction of the claim, we will examine the patent file and prosecution history of the "radially inward" language. Zink originally submitted fourteen claims.[10] Of these, only two survived, the now renumbered claims 1 and 2. None of the original claims called for injecting steam radially inward, although the description of the patent contained that language. Claim 2 calls for "means for injecting steam from a plurality of points into the dump-gas as combustion takes place at the burner tip . . ." Three claims contained language similar to that in claim 2, but were cancelled to meet objections over the German patent, which showed an arrangement of tubes of gas, steam, and air which cause a draft, and which, to some extent, control the flows through the tubes. App. 518. Claim 2, however, was eventually accepted.[11]

Claim 5 (originally 17) was added with Zink's first set of amendments and called for

a plurality of nozzles circumferentially spaced about the upper end of the first tube having end portions directed radially inward with respect to the first tube, and means for supplying water vapor under pressure into said nozzles and into said tubular member for discharge into the gases being burned adjacent the upper end of the first tube.

App. 514. Claim 5 was "rejected as unpatentable over [the German patent] in view of Green." App. 519. Zink distinguished Green as using a funnel shaped spread to combine gas, air, and steam in mixing chambers, as opposed to utilizing nozzles directing steam radially inward.[12] Claim 5 was accepted.

Claims 6, 7, 8, and 9 were added in the second round with the examiner. Like claim 5, each calls for a plurality of circumferentially spaced nozzles extending radially inward. Claims 7 through 9 were immediately accepted, but claim 6 (original claim 18) was rejected under Lampe. Zink amended claim 6 to add features to distinguish the patent from the nonanalogous spraygun art covered in Lampe.[13] In remarking on claim 6, Zink added:

plurality of nozzles 48 circumferentially spaced about the upper end of the tube 10 having end portions directed radially inward with respect to the tube 10. Claim 17 also requires means for supplying water vapor under pressure not only to the nozzles 48 but also to the tubular member 53. The combination called for by claim 17 provides for the discharge of steam radially inward from the nozzles 48 and radially outward from the discharge orifices 56. Claim 17 thus defines a combination which is not disclosed in any single reference of record.

App. 525–26.

---

**10.** The original claims 1–5 and 11–14 described the tubes, burner, igniters, the glow plug, and cooling system. These were first amended or cancelled to meet the objection of an old combination of flare stack and a pilot or plurality of pilots as in Rodman, No. 2,537,091, and Elster, No. 2,480,230.

**11.** Upon rejection of claim 2 [originally claim 10] because of the German patent, Zink supplied a translation and distinguished the cooling, means, and volume control of the '399. App. 524. On the first rejection, Zink stated:

Claims 7 to 10 pertain to the feature of injecting water vapor and air into the gases being burned at the upper end of the flare stack so as to combine with the incandescent free carbon in the flame to produce carbon monoxide and hydrogen and thereby promoting combustion with a smoke free flame.

App. 516.

**12.** Zink argued:

The rejection of claim 17 [claim 5] as being unpatentable over the German patent to Hanke in view of Green 1,561,848 is not believed to be proper. The patent to Green discloses the feature of supplying steam through the pipe 2 which is spread by the funnel shaped member 8. The steam is combined with the gas-air mixture escaping from the mixing chamber 16. Claim 17 calls for a

**13.** Claim 6 follows. Underlined sections were deleted. Capitalized portions were amended to distinguish Lampe.

In a flare stack burner, an elongated vertically disposed tube for guiding gases upwardly therein, MEANS IGNITING SAID GASES for combustion adjacent an upper end thereof said tube, a manifold embracing said tube adjacent an THE upper end thereof, a plurality of circumferentially spaced nozzles supported by said manifold in open communication therewith, means for supplying steam into said manifold for escape through said nozzles, and upper ends of said nozzles extending radially inward with respect to said

This claim calls for the nozzles 48 extending radially inward above the upper end of the tube 10 so that the jets of steam are directed generally transversely of the path of movement of the dump-gases. App. 532.

Claim 10 was added in the third round. It is essentially the same as claim 5, but it specifically states that the nozzles are "to discharge jets of water vapor.". The patent examiner accepted claim 10 without comment.

In the description of the patent, Zink states, "The nozzles 48 then extend inwardly at angles to the vertical. The nozzles 48 discharge steam radially inwardly into dump-gas flame." The description ends with the statement that

> While the invention has been described with reference to a particular structural arrangement and various details, changes may be made in the elements as well as alterations in the overall assembly.

App. 382.

It is apparent from the file that some of the "radially inward" language may have been added to meet objections of the patent examiner. The original description, however, spoke of discharging steam radially inward, and claim 2 was allowed with the general statement that steam is injected into combusting gas. We find that this is a case in which the patentee should not be presumed to have made a disclaimer broader than was necessary to yield to the actual challenge by the examiner. The prior art does not disclose a plurality of circumferentially spaced nozzles above the tip and directing steam radially inward as combusting gas emerges. Green and the German patent at best have steam directed radially outward by a funnel. The NAO design falls on the side of the patent, and the rule that a disclaimer should not be read broader than necessary should apply. *Nationwide Chemical Corp. v. Wright*, 584 F.2d at 719.

## E. Doctrine of Equivalents

The district court held that the '399 was a pioneer patent entitled to broad protection under the doctrine of equivalents. Even if we were to disagree, the slightest protection afforded by the doctrine brings the NAO devices into the infringement range. All NAO did was slightly cant its nozzles to one side. The Zink exhibits and experts showed that despite the canting, the end portions still were partially directed inward, and steam was directed radially inward. The NAO device performs substantially the same function in substantially the same way to obtain substantially the same result. *Graver Tank and Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *Gaddis v. Calgon Corp.*, 506 F.2d 880, 881 (5th Cir. 1975). The district court did not err in finding infringement.

## IV. REMEDIES

Both parties contest the district court's award of damages. Although Zink originally contested the failure to award fees and prejudgment interest, this issue has not been pursued on appeal and we do not view the trial court's findings as clearly erroneous. *Williamson-Dickie Mfg. Co. v. Hortex, Inc.*, 504 F.2d 983, 988–89 (5th Cir. 1974); *Garrett Corp. v. American Safety Flight Systems, Inc.*, 502 F.2d 9, 22–23 (5th Cir. 1974). We also find that the district court did not err in failing to award treble damages. *See Dow Chemical Co. v. Chemical Cleaning, Inc.*, 434 F.2d 1212 (5th Cir. 1970), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1621, 29 L.Ed.2d 113 (1971).

The statute states that the court shall award "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . ." 35 U.S.C. § 284 (1976). The district court made the following findings:

---

tube ABOVE THE UPPER END THEREOF to discharge jets of steam from a plurality of

points into the gases as combustion takes place at the upper end of said tube.
App. 521.

20. As proof of damages, ZINK introduced evidence showing that if sales of infringing burner tips by NAO had been made by ZINK, at ZINK's prices, the sales of such flare tips would have amounted to $471,000. In addition, ZINK offered evidence that, in its experience, it would have sold ancillary equipment with the burner tips in the amount of approximately $460,000 for total sales lost of approximately $930,000. ZINK's evidence was that it enjoyed gross profits of approximately 50% on burner tips and 30% on ancillary equipment so that its claimed overall damage would have been $373,200. On the other hand, there was undisputed testimony that a number of the sales of allegedly infringing burner tips by NAO were made for what the Court considers to be non-infringing uses, were destroyed before sale, or were shipped and sold after the date of the expiration of the patent thereby diminishing the amount of damage suffered by ZINK as a result of the infringement. 21. On conflicting evidence, the Court finds that 10% of sales of the patented device would be a reasonable royalty. Damages in the amount of 10% of something less than $471,000 would not adequately compensate ZINK for the damages suffered and the Court finds, on the conflicting evidence, that damages in the amount of $100,000 would adequately compensate ZINK.

Zink claims as damages $378,513, the gross profit lost on sales of both tips and ancillary equipment. NAO points to the failure of the trial court to explain how it reached the $100,000 figure, and argues for a 5% royalty.

The parties make several arguments concerning damages. They dispute whether NAO tips ordered before but delivered after the expiration date of the patent should be included in the award. They contest whether the court should have included in the damage calculation figures for related equipment not under patent. They disagree with the court's finding on a reasonable royalty. Zink claims the trial court erred in finding that some tips were sold

for noninfringing uses and in excluding a damaged tip. NAO claims not all profits should have been included; Zink claims that because NAO and Zink are the only producers, the full amount should be awarded.

██ The district court accepted and rejected some of these arguments. The awarding of damages involves a subtle judicial function; the statute allows considerable latitude. *Bros Incorporated v. W. E. Grace Mfg. Co.*, 320 F.2d 594, 599 (5th Cir. 1963). *See Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 533 F.2d 126 (3d Cir. 1976); *Maloney-Crawford Tank Corp. v. Sauder Tank Co., Inc.*, 511 F.2d 10, 14–15 (10th Cir. 1975). The district court was confronted with a wide range of figures from which to choose, including $378,513 (gross profits on all tips and equipment), $201,438 (gross profits on uncontested tips and equipment), $93,218 (10% of gross sales), $47,100 (10% of sales of tips), and $29,734 (10% of uncontested tips). Following the statute's language, the court found $47,100 to be the minimum reasonable royalty, but then decided that amount would not be "adequate to compensate" the patent holder. While the trial judge's failure to articulate exactly how much he was allocating for each item of damage may not be the best practice, we find that the award was within the statutory range based upon the evidence presented.

## V. CONCLUSION

Under the Constitution and the patent act, inventors are induced to reveal their creations for the benefit of all in exchange for a seventeen-year monopoly. The Zink Company invented its novel flare tip years before the popular concern with air pollution and the environment, and now that the patent has expired the design is in the public domain. The '399 is precisely the kind of invention the framers of the Constitution wanted revealed and protected. The district court order finding the '399 patent valid and infringed, and awarding $100,000 damages is AFFIRMED.

Figure 1. The NAO design.

Figure 2. The Zink '399; top view.

Figure 4. The NAO design;
Cross-section

Figure 3. The Zink '399; cross-section.