Fred P. MATTSON, Plaintiff and
Counter-Claim Defendant,

v.

FORD MOTOR COMPANY, Defendant
and Counter-Claimant,

v.

EXHAUST CONTROLS, INC.,
Counter-Claim Defendant.

Civ. No. 3–79–344.

United States District Court,
D. Minnesota,
Third Division.

Jan. 18, 1982.

John F. Clifford, Meshbesher, Singer &
Spence, Ltd., Minneapolis, Minn., and Rob-
ert R. Gavic, Spring Valley, Wis., for plain-
tiff and counter-claim defendant.

Dennis D. Allegretti, Allegretti, Newitt,
Witcoff & McAndrews, Ltd., Chicago, Ill.,
and John M. Mason, Dorsey, Windhorst,
Hannaford, Whitney & Halladay, Minneap-
olis, Minn., for defendant and counter-
claimant.

No appearance for counter-claim defend-
ant Exhaust Controls, Inc.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Fred P. Mattson brought this
action for damages alleging infringement
by defendant Ford Motor Company of Unit-
ed States Patent No. 3,309,520 (hereinafter
"the 520 patent"). The defendant counter-
claimed against plaintiff and Exhaust Con-
trols, Inc. for a declaration of invalidity of
the 520 patent.[1] Diversity and patent juris-
diction are alleged. 28 U.S.C. §§ 1332 and
1338. Now pending before the court is
defendant's motion for summary judgment
on plaintiff's claims.

The 520 patent relates to a device that
supplies air to the exhaust system of an
automobile engine. The patent office de-
scription of the device indicates that the
injection of air causes combustion of un-
burned fuel components which reduces the
level of pollutants released by the vehicle.

---

1. The plaintiff assigned the patent to the coun-
ter-claim defendant Exhaust Controls, Inc. in
1967. Exhaust Controls subsequently reas-
signed the patent back to the plaintiff in 1973.
Exhaust Controls is now a defunct corporation,
having no principal place of business, no active
officers and no Board of Directors. It has
made no appearance in this action, and the
defendant has not perfected service within the
time allotted by this court.

The file wrapper[2] for the 520 patent reveals that it has ten claims. It is not disputed that claims 2 through 10 are dependent upon claim 1. Claim 1 specifies three separate elements: a check valve, a hollow body which houses the check valve, and a heat shield. As the pressure in the exhaust system varies, the check valve opens and closes, thereby controlling the flow of air to the exhaust manifold. The heat shield is a cylindrical-shaped body composed of highly compressed rolled asbestos situated in the air passage directly downstream of the check valve. The heat shield deflects air towards the walls of the valve housing when the check valve is open and acts as a baffle protecting the valve against the heat of gases in the manifold whenever the valve is closed.

The plaintiff originally proposed his claim to the patent office with only two elements: the hollow body and the check valve. This claim was rejected as unpatentable. He then added the third element, the heat shield, and the claim was accepted, and the patent issued.

The accused structure is the Ford Thermactor II which is incorporated into the Ford Fairmont and Zephyr models. The Thermactor II contains a check valve, a reed stop, and a valve plate, all of which are connected (as shown by plaintiff's diagrams, Exhibit B to plaintiff's Morical affidavit at figure 14 [hereinafter "Exhibit B"], as well as a model of the Thermactor II supplied by the plaintiff). The operation of the Thermactor II is not disputed by the parties. When there is positive pressure downstream of the check valve, it lies flat against the plate to cover the air passage hole in the valve plate. Negative pressure downstream causes the check valve to bend away from the valve plate, thereby allowing the flow of air through the air passage to the exhaust manifold. As the check valve bends to open the air passage it assumes the curvature of the reed stop. It appears from the plaintiff's own exhibits that the reed stop on the Thermactor II is not within the air passage when the check valve is bent open. The heat shield on the 520 patent, however, is within the air passage and acts to deflect the flowing air.

Defendant has moved for summary judgment on plaintiff's claims. In its original memorandum it argued that the Thermactor II lacks an essential element of the 520 Patent (the heat shield) and that without this element, there is no infringement.

In response plaintiff admitted that the Thermactor II does not contain a heat shield that falls within the literal scope of claim 1, but argued that a genuine issue of material fact existed, precluding summary judgment, because plaintiff would establish infringement using the doctrine of equivalents.[3] He claims that the two components attached to the Thermactor II check valve, the valve plate and the reed stop, together comprise the equivalent of the 520 patent heat shield. To support this position plaintiff filed an affidavit of its expert, Edward Morical, which states that the reed stop acts as a "heat sink and heat dissipating device" while the valve plate, being made of aluminum and magnesium, serves as a heat conductor which protects the check valve from excessive heat (see page 2 of plaintiff's exhibit A).[4]

Defendant then admitted for the purpose of its motion that plaintiff's factual allegations and affidavit are correct and argues

**2.** The file wrapper is the complete file of papers submitted to the patent office relating to the patent application process and includes any claims that were rejected as unpatentable.

**3.** The purpose of the doctrine of equivalents is "to protect patentees from devices with slight deviations that differ only in name, form, or shape" from the patented device, but which "perform substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). *See also Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929); *John Zink Co. v. National Airoil Burner Co.*, 613 F.2d 547, 555 (5th Cir. 1980).

**4.** The Morical affidavit uses different terminology in describing the reed stop and valve plate, referring to them respectively as a "metal flange" and a "disc."

that plaintiff is precluded as a matter of law. from attempting to find the equivalent of the heat shield in the Thermactor II check valve by virtue of the doctrine of file wrapper estoppel.

*Discussion*

■ File wrapper estoppel can limit a patentee's right to protection. If during the prosecution in the patent office an applicant narrows, surrenders, or amends his claim to meet the objections of the examiner, he may not thereafter recapture through the doctrine of equivalents that which he eliminated from the claims. *John Zink Co. v. National Airoil Burner Co.*, 613 F.2d 547, 555 (5th Cir. 1980). The classic statement of this doctrine is contained in *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 443–44, 47 S.Ct. 136, 141, 71 L.Ed. 335 (1926), where the court stated:

> (W)here an applicant for a patent to cover a combination is compelled by the Patent Office *to narrow his claim by the introduction of a new element*, he cannot after the issue of the patent *broaden his claim by dropping the element which he was compelled to include* in order to secure his patent.... The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. (emphasis added)

An examination of cases in which file wrapper estoppel has been applied is instructive here. In *Crane Co. v. Aeroquip Corp.*, 504 F.2d 1086 (7th Cir. 1974), the accused device excluded a material and essential element of certain claims of the patentee, thus avoiding literal infringement and causing the patentee to rely on the doctrine of equivalents. There was no infringement because the element was crucial to the patentee in securing the patent, and the patentee could not expand his claims to cover the accused device. The doctrine of

equivalents was superseded by the doctrine of file wrapper estoppel. 504 F.2d at 1089.

In *Arco Industries Corp. v. Chemcast*, 633 F.2d 435 (5th Cir. 1980), the patent examiner allowed the applicant's claim only after he amended it to include a certain "recess feature" which defendant's device lacked. Therefore, the claim could not cover the accused device because "a claim once narrowed cannot be construed to reincarnate its pre-amendment scope" or "to revive rejected or abandoned claims." 633 F.2d at 440.

In the present case, the plaintiff was compelled by the original rejection of his claim to narrow it by adding the crucial third element, the heat shield. The detailed description of the heat shield contained in claim 1 makes it clear that the only purpose of the heat shield is to protect the check valve from excessive heat.[5] It is not attached to or incorporated into the check valve; rather, it is a separate distinct element performing its own function.

Summary judgment is an extreme remedy, not to be entered unless the movant has established its right to judgment with such clarity that there can be no room for controversy and unless the opposing party is not entitled to recover under any discernable circumstances. *Vette Co. v. Aetna Casualty and Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The question here is, taking the plaintiff's factual allegations as correct, whether as a matter of law he is barred by file wrapper estoppel from proving infringement with the doctrine of equivalents.

The affidavit of plaintiff's own expert identifies no separate and distinct heat shield in the Thermactor II and identifies no separate object within the air passage of the Thermactor II (see plaintiff's Exhibit A at page 2). Instead, the affidavit refers to

---

5. Claim 1 specifically recites:

(c) and means for shielding said check valve from hot gases in said manifold and comprising a shield element extending transversely of said passage between said check valve and opposite end of the body means and in close proximity to said check valve, said shield element being disposed to guide incoming air from the axis of said passage toward the peripheral portion of said passage whereby to cool said check valve and said manifold, when the check valve is open, and to provide a baffle against the heat of gases from said manifold toward said check valve, when the check valve is closed.

parts incorporated into the check valve itself to find the equivalent of the heat shield. To allow the plaintiff to attempt to demonstrate equivalence in this manner would impermissibly enlarge the scope of his narrowed claim to its preamended state and would clearly violate the doctrine of file wrapper estoppel. *See Arco Industries Corp. v. Chemcast*, 633 F.2d at 439–40. During oral argument the plaintiff offered no reason why file wrapper estoppel should not apply in this case.

On this record plaintiff is barred by file wrapper estoppel from attempting to establish infringement through the doctrine of equivalents. Without the benefit of the doctrine of equivalents, the plaintiff is unable to demonstrate the existence of the heat shield element. Since a patent is not infringed by a device which omits one element of the patent, there can be no infringement of the 520 patent here. *See e.g., Scharmer v. Carollton Mfg.*, 525 F.2d 95, 103 (6th Cir. 1975).

The defendant's motion for partial summary judgment should be granted and the case dismissed since defendant has stated its intention to dismiss its counter-claims upon dismissal of plaintiff's claims.

## ORDER

Accordingly, based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. The defendant's motion for partial summary judgment is granted, and plaintiff's complaint is dismissed.
2. The defendant's counter-claims against plaintiff and counter-claim defendant, Exhaust Controls, Inc., are dismissed.
3. The parties shall be responsible for their own costs.